No. 3052.—STATE ex rel. S. M. BURNETT *v.* H. C. WARMOTH et als.

The act of the General Assembly, approved sixteenth of March, 1870, authorizing the payment of the floating debt of the State by the negotiation of State bonds at a fixed rate or by funding the warrants of the State in bonds at a fixed rate, which created a board of liquidators, with power to sell the bonds, not below a fixed rate, within a given time, did not make it peremptory on said board to sell said bonds at that rate if a higher price could be had, nor did it prohibit the sale of the bonds after the limitation had expired, provided they realized the price fixed in the act.

Therefore the board of liquidators, having left to them a discretion as to whether they would sell the bonds or not and as to the time of sale, can not be compelled by mandamus to exchange bonds authorized to be issued by this act for warrants held by the creditors of the State.

The doctrine heretofore announced by this court is reaffirmed in this case, that a mandamus will never issue to compel a public officer to perform a ministerial act where the law, creating or requiring such duty to be performed by the officer, allows him a discretion either in the manner or the matter of doing it.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble, J. Hays & New*, for relator, appellant. *S. Belden*, Attorney General, for defendants.

HOWELL, J. The relator has appealed from a judgment refusing a peremptory mandamus against the board of liquidation, composed of the Governor, the Auditor and the Fiscal Agent of the State.

The only question is the interpretation of the third section of "An Act to provide for the payment or funding of the floating debt of the State by the issue and sale or exchange of State bonds," under which the relator claims the right to exchange a large amount in State warrants for said bonds at the rate fixed in said section.

The first section of the act authorizes and directs the Governor to issue bonds to the amount of three millions of dollars. The second section constitutes the board of liquidation, who are authorized to sell said bonds, in certain named cities, at not less than seventy-two dollars on the one hundred, the proceeds to be paid into the State treasury to the credit of this fund and to be employed, under the direction of the board of liquidation, exclusively for the payment and redemption of the floating debt of the State, past due interest coupons and past due State bonds, due and adjusted prior to first April, 1870. The third section reads :

" That, if at the expiration of the thirty days from and after the passage of this act, the said board of liquidation shall not have sold the said bonds in accordance with the provisions of the second section of this act, then and in that case, they are hereby authorized and empowered to exchange the aforesaid bonds at the rate of one hundred dollars in bonds for each and every seventy-two dollars of all outstanding evidences of indebtedness against the State of Louisiana, which may have been issued in accordance with law prior to the passage of this act," (sixteenth March, 1870).

At the expiration of the thirty days one-third of the bonds were unsold.

The question presented is, was it the intention of the Legislature, which is the test, to confer any discretion or impose a positive and absolute duty in regard to the exchange of the bonds ?

If it is clear that the board has no discretion, but must, after the lapse of thirty days, exchange the bonds, whatever may be their value, for the specified evidences of debt, the writ prayed for should be granted ; but if there is any reasonable doubt, it should not. See State ex rel. Bonnabel v. Police Jury of Jefferson, decided December 12, 1870.

The duty of the Legislature was to provide for the prompt *payment* of the floating debt, and its primary object, in adopting this statute, was to meet this duty and procure the money to pay with, and in fixing a minimum limit upon the sale of the bonds it limited the discretion of the board in that direction, but not their duty as faithful agents, to procure the best price possible, the public credit and public honor being involved. But it also provided, that in case this minimum price should not be obtained within a certain time, the agents should be empowered to exchange the bonds with the creditors at said minimum price or rate. The words used are " authorized and empowered." There are no terms used, however, which restrict the sale of the bonds to thirty days, and it is not a strained construction to say that, after the lapse of that time, the board, as faithful agents, might either sell or exchange, as the public good required.

Suppose, at the time indicated, none of the bonds, from any cause whatever, had been sold, does the statute mean that the creditors, holding the specified evidences of debt, could obtain nothing for them, except those bonds at the rate mentioned, and the board of liquidation would be compelled to exchange them, although they might, at that particular date, begin to advance and come into demand at a much higher rate? Was it the intention of the Legislature to give to the creditor the opportunity of speculating upon the public securities or to provide the means of paying and liquidating just debts?

These inquiries, we think, are calculated to raise a reasonable doubt as to discretion or no discretion in the board of liquidation, and while we consider it their duty to discharge the functions of their trust with fidelity and promptitude, yet the case presented does not authorize or compel the writ of mandamus as demanded.

Judgment affirmed.